717 F.2d 1201
 Clyde BROOKINS, Appellant,
v.
SARGENT INDUSTRIES, INC., a California corporation, Garwood
Division of Sargent Industries of Delaware, Inc., an Alabama
corporation, Sargent Industries of Delaware, Inc., a
Delaware corporation, and National Disposal Service of
Nebraska, Inc., a Nebraska corporation, Appellees.
Flora M. BROOKINS, Appellant,
v.
SARGENT INDUSTRIES, INC., a California corporation, Garwood
Division of Sargent Industries of Delaware, Inc., an Alabama
corporation, Sargent Industries of Delaware, Inc., a
Delaware corporation, and National Disposal Service of
Nebraska, Inc., a Nebraska corporation, Appellees.
 No. 82-2219.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1983.
Decided Sept. 23, 1983.
As Amended Oct. 12, 1983.
 
 Richard L. Walentine, Richard C. Gordon and Betty L. Egan of Walsh, Walentine, Miles, Fullenkamp & O'Toole, Omaha, Neb., for appellees.
 Warren C. Schrempp and Steven Lefler of Schrempp, Lefler, Hoagland & Gray, Omaha, Neb., for appellants.
 Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Clyde and Flora Brookins appeal from adverse jury verdicts on his claim for personal injuries resulting from a trash load packer accident, and on her claim for loss of consortium based on her husband's injuries. The principal contentions on appeal are that the trial court erred in its jury instructions (1) by giving retroactive application to Neb.Rev.Stat. Sec. 25-1151 (1979), in amended form, which made contributory and comparative negligence a defense to strict liability, and (2) by placing on the plaintiff the burden of proving he was unaware of the nature and extent of the claimed defect under the doctrine of strict liability. We agree with both contentions, and reverse and remand for further proceedings.
 
 
 2
 Clyde Brookins was a truck driver for National Disposal Service. The trash load packer in question was manufactured by Garwood Division of Sargent Industries of Delaware, Inc. and was sold to National Disposal in the fall of 1975. The load packer compressed trash and garbage so as to reduce the bulk to be transported. It had a hopper opening for deposit of trash. There was a rotary sweep blade which moved in a circular motion and swept the trash from the hopper toward the packer panel. Two control levers, located at the rear of the packer, operated the sweep blade and the packer panel.
 
 
 3
 On March 13, 1978, a snowy and drizzly day in Omaha, Clyde Brookins backed his truck up to the dock at Sunbeam Warehouse near 76th and Dodge to load some refuse. Brookins got out of his truck and dragged the trash cans to the end of the dock in order to dump their contents into the hopper. At that point Brookins states that he slipped and fell in such a manner that his right leg went into the hopper, and was struck by the sweep blade, which had become activated when one of Brookins' arms came in contact with the operating control levers. As a result of this accident, Brookins suffered serious injuries to his right leg.
 
 
 4
 Clyde Brookins sued the designers, manufacturers, and sellers of the load packer in question, alleging that they were liable under the theories of strict liability and negligence. In a separate suit Flora Brookins claimed that the injuries sustained by Clyde Brookins as a consequence of the March 13, 1978 accident, resulted in loss of society, care, companionship, and consortium. The jury found for the defendants, and judgments were entered accordingly. This consolidated appeal followed.
 
 I.
 
 5
 The Brookinses first argue that the trial court erred in giving retroactive effect to Neb.Rev.Stat. Sec. 25-1151 (1979), which amended Nebraska's contributory and comparative negligence statute to cover the strict liability doctrine. Section 25-1151 was amended to include the following emphasized language:
 
 
 6
 In all actions brought to recover damages for injuries to a person or to his property caused by the negligence or act or omission giving rise to strict liability in tort of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence or act or omission giving rise to strict liability in tort of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence or act or omission giving rise to strict liability in tort and contributory negligence shall be for the jury.
 
 
 7
 The amendment went into effect on July 22, 1978, which was after the date of Clyde Brookins' accident. Before the amendment, Nebraska law did not permit contributory or comparative negligence as a defense to strict liability.[1]
 
 
 8
 The general rule in Nebraska is that statutes are not to be given retroactive effect unless the legislature has clearly expressed a contrary intention. Retired City Civilian Employees Club of the City of Omaha v. City of Omaha Employees' Retirement System, 199 Neb. 507, 510, 260 N.W.2d 472, 474 (1977). Exceptions, however, are recognized for procedural legislation, Durousseau v. Nebraska State Racing Commission, 194 Neb. 288, 293, 231 N.W.2d 566, 569 (1975), and for curative legislation, Lynch v. Metropolitan Utilities District, 192 Neb. 17, 23, 218 N.W.2d 546, 550 (1974). In this case, the Nebraska legislature has not clearly expressed a contrary intention. The parties have not argued the applicability of the curative exception, and we do not think it relevant. See generally 73 Am.Jur.2d Statutes Sec. 353 (1974). Accordingly, the only question is whether this is procedural legislation. After carefully examining the pertinent state law on this issue,[2] we believe that the Nebraska courts would not view the amendment to section 25-1151 as procedural. Under the amended statute, a plaintiff now may be completely barred from recovery in a strict liability action if the negligence of the plaintiff is more than slight and the act giving rise to strict liability of the defendant is less than gross in comparison. Because the statute creates a new defense that potentially cuts off a plaintiff's right to recover, we have no difficulty in concluding that this is not a procedural change but is a substantive change in rights and obligations. Cf. Wakeley v. Douglas County, 109 Neb. 396, 399, 191 N.W. 337, 338 (1922). Accordingly, the general rule of nonretroactivity would apply.
 
 
 9
 Hancock v. Paccar, Inc., 204 Neb. 468, 283 N.W.2d 25 (1979), involved a strict liability claim based on an accident occurring in 1971. The court's opinion did not consider the possibility that the amended contributory and comparative negligence statute was retroactive although the statute had been in effect since the previous year. Thus, it sheds no illumination on the issue here.
 
 
 10
 Sargent relies primarily on French v. Grove Manufacturing Co., 656 F.2d 295 (8th Cir.1981), and on Tulkku v. Mackworth Rees, Division of Avis Industries, Inc., 101 Mich.App. 709, 301 N.W.2d 46 (1980), overruled on other grounds, Hardy v. Monsanto Enviro-Chem Systems, Inc., 414 Mich. 29, 323 N.W.2d 270 (1982). In French, 656 F.2d 295 (8th Cir.1981), this court considered a similar question of whether the Arkansas Product Liability Act of 1979 should be applied retrospectively to a cause of action brought under the Arkansas strict liability statute. In that case we held that the statute could be applied retroactively because it created no new causes of action or substantive rights or liabilities; rather, it merely set forth definitions of terms to be used, established a limitations period, and enumerated defenses and indemnification remedies available in product liability actions. See generally Third Annual Survey of Arkansas Law 1978-1979 3 U.Ark. Little Rock L.J. 145, 324 (1980) (Arkansas Product Liability Act of 1979 "merely codifies some major precepts and evidentiary rules, and does not attempt to change existing product liability case law"). In contrast, Nebraska's amended contributory and comparative negligence statute does not seek to codify existing law but effects a substantive change in rights and liabilities. Thus, it would not fall within the exception to nonretroactivity as recognized and applied in French.
 
 
 11
 Sargent's reliance on Tulkku is equally misplaced. Tulkku gave retroactive effect to a Michigan product liability statute based on the analysis that the statute was "remedial" in character. Sargent has not cited any case authority, and we have not found any, which demonstrates that Nebraska recognizes a similar remedial exception. Even under the analysis in Tulkku, however, the remedial exception would not apply to changes in substantive rights and liabilities, which we have found to be made by the Nebraska statute. Unlike the statute considered in Tulkku, the Nebraska statute does not simply operate to diminish a plaintiff's recovery, but may act as a total bar. Accordingly, we do not find Tulkku persuasive.
 
 
 12
 Therefore, we hold that the district court erred in giving retroactive application to Nebraska's amended contributory and comparative negligence statute.
 
 II.
 
 13
 The Brookinses further contend that the trial court erred in placing on the plaintiff the burden of proving that he was unaware of the nature and extent of the claimed defect under the doctrine of strict liability.
 
 
 14
 In Kohler v. Ford Motor Co., 187 Neb. 428, 434, 191 N.W.2d 601, 606 (1971), the Nebraska Supreme Court adopted the doctrine of strict liability in tort. The court approved an instruction which contained as an item of proof that "the plaintiff was unaware of the claimed defect," but did not rule on that portion of the instruction. Subsequently, in Hancock v. Paccar, Inc., 204 Neb. 468, 485-86, 283 N.W.2d 25, 38 (1979), the Nebraska Supreme Court held that the plaintiff did not have to prove such in a strict liability case:
 
 
 15
 No plaintiff should be required to prove the absence of all possible defenses in order to recover. That burden properly belongs to the defendant. To the extent that any confusion still remains we hold that a plaintiff in a strict tort liability case is not required to plead and prove he was unaware of the defect. [Emphasis in original].
 
 
 16
 Despite the Nebraska Supreme Court's holding in Hancock, the district court believed that it would not be error to require a products liability plaintiff to demonstrate unawareness of the claimed defect, provided that contributory negligence could be lawfully interposed as a defense to a strict liability claim. Although this might be a permissible inference in other circumstances, here the highest court of the state has specifically addressed the burden of proof issue in a strict liability action and has squarely held that the plaintiff is not required to plead and prove that he is unaware of the defect. There is no indication of any kind that the court would alter its position by virtue of the amended contributory and comparative negligence statute, which came into effect the year before the court's decision. We conclude that the district court's instruction is an erroneous statement of Nebraska law and that it placed an improper burden of proof upon the plaintiff.
 
 
 17
 Because the trial court submitted the case to the jury under erroneous instructions, we reverse the judgment of the district court and remand these causes for a new trial.[3]
 
 
 
 [1]
 See Hawkins Construction Co. v. Matthews Co., 190 Neb. 546, 567, 209 N.W.2d 643, 655 (1973). After passage of the statute here in question, Hawkins was overruled on other grounds in National Crane Corp. v. Ohio Steel Tube Co., 213 Neb. 782, 332 N.W.2d 39 (1983)
 
 
 [2]
 See State v. Shiffbauer, 197 Neb. 805, 811, 251 N.W.2d 359, 363 (1977) (probation conditions procedural); Oviatt v. Archbishop Bergan Mercy Hospital, 191 Neb. 224, 226, 214 N.W.2d 490, 492 (1974) (rule of privilege procedural); In re Estate of Cook, 188 Neb. 312, 313-14, 196 N.W.2d 380, 381-82 (1972) (rule of evidence under dead man's statute procedural); Happy Hour, Inc. v. Nebraska Liquor Control Commission, 186 Neb. 533, 534, 184 N.W.2d 630, 631 (1971) (review process for license suspension procedural); Abbott v. State, 117 Neb. 350, 354, 220 N.W. 578, 579 (1928) (time for appearance in appeal procedural); Lovelace v. Boatman, 113 Neb. 145, 148, 202 N.W. 418, 419 (1925) (authorized return of verdict by five-sixths members of jury procedural)
 
 
 [3]
 In view of the disposition of this case, we find it unnecessary to address the Brookinses' remaining contentions