Renee UTTERBACK, etc., et
al., Plaintiffs,

v.

UNITED STATES of America,
Defendant/Third–Party
Plaintiff,

v.

Young–K YOON, M.D., et al.,
Third–Party Defendants.

Civ. A. No. C 83–0866–L(A).

United States District Court,
W.D. Kentucky,
at Louisville.

Dec. 11, 1987.

Frederick C. Dolt, Louisville, Ky., for plaintiffs.

Richard Dennis, Asst. U.S. Atty., David Busse, Asst. Dist. Counsel, Veterans Admin., Louisville, Ky., for defendant/third-party plaintiff.

Ben J. Talbott, Jr., Louisville, Ky., for Yoon, Puri and U of L.

MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is pending before the Court on two requests by the United States for protective orders, and on the motions of the opposing party to produce the documents that the Government seeks to protect.

■ The first motion pertains to a memorandum from the Chairman of the Board of Investigation of the Veterans Administration addressed to the Medical Center Director on May 10, 1983; the memorandum which was submitted to the Court in camera is signed by three members of the Board of Investigation and contains an outline of the facts relating to the surgery which was performed, as well as the conclusions of the committee as to where responsibilities lay.

The Government contends that this document is confidential and may not be submitted to the plaintiff or her counsel or to any one else except as provided in Title 38 U.S.C. § 3305(b)(1).

Title 38 U.S.C. § 3305(a) provides:
Records and documents created by the Veterans Administration as part of a

medical quality assurance program other than reports submitted to section 4105(2)(b) of this Title are confidential and privileged and may not be disclosed to any person or entity except as provided in section (b) of this section.

Title 38 U.S.C. § 3305(b) provides many exceptions to the confidentiality requirements set out in 38 U.S.C. § 3305(a), but none of these exceptions is applicable to an action by a plaintiff for malpractice.

Title 38 U.S.C. § 3305(c) defines the term "medical quality assurance program" as follows:

(1) with respect to any activity carried out before the date of the enactment of this action, a Veterans' Administration systematic health-care review activity carried out by or for the Veterans' Administration for the purpose of improving the quality of medical care or improving the utilization of health-care resources in Veterans' Administration health-care facilities; and

(2) with respect to any activity carried out on or after the date of the enactment of this section, a Veterans' Administration systematic health-care review activity designated by the Administrator to be carried out by or for the Veterans' Administration for either such purpose.

In the unreported opinion of *Harrell v. United States of America,* 742 F.2d 1448 (4th Cir.1984), plaintiff brought an action against the United States under the Federal Tort Claims Act alleging that he contracted an infection as a result of the negligence of the Veterans Administration and of certain doctors who were employed there. He alleged that the hospital and doctors were negligent in failing to follow standard procedures of sanitization and cleanliness, in failing to comply with disease control standards of a reasonable and prudent hospital and in failing to inform him of the risk of infection inherent in having a cardiac catheterization performed at the hospital.

The Magistrate entered summary judgment for the United States and on appeal the plaintiff contended that the Magistrate erred in refusing to compel the defendant to produce documents relating to the hospital's infection control procedures, tests and results.

The appellate court found no abuse of discretion in the Magistrate's denial of Harrell's motion to compel the production of infection control documents. The Magistrate had found that these documents were protected from disclosure by 38 U.S.C. § 3305(a) and (c). The court devoted the great majority of its opinion to discussing the question of whether or not the statute was in effect at the time of the plaintiff's injuries, but it did state on page 7 of the opinion that there was no abuse of discretion in the denial of the motion to compel production. The court did not discuss in any way its reason for reaching that conclusion.

Defendant cites as authority two Illinois decisions, *Jenkins v. Wu,* 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162 (1984), and *Niven v. Siqueira,* 109 Ill.2d 357, 94 Ill. Dec. 60, 487 N.E.2d 937 (1985). In both of those cases, the courts addressed Illinois statutes which made confidential records used in the course of internal quality control or for the purpose of reducing morbidity or mortality or improving patient care. The courts held such records should be privileged and not divulged to anyone except in a case involving staff privileges. The court in *Jenkins, supra,* cited the case of *Bredice v. Doctors Hospital, Inc.,* (D.D. C.1970), 50 F.R.D. 249, *aff'd* (D.C.Cir.1973), 479 F.2d 920. There, in a medical malpractice action, plaintiff sought production of committee proceedings relating to the death of plaintiff's decedent. In holding that such proceedings were entitled to a qualified privilege on the basis of public policy, the court stated:

'Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessi-

ty, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.' 50 F.R.D. 249, 250.

Both *Jenkins* and *Niven* hold that the legislature of Illinois wished "to encourage candid and voluntary studies for programs used to improve hospital conditions and patient care or to reduce the rate of death and disease." In order to do that, the legislature provided that the materials used should be confidential. See *Niven, supra,* 94 Ill.Dec. at 65, 487 N.E.2d at 942; *Jenkins, supra,* 82 Ill.Dec. at 389, 468 N.E.2d at 1169.

Plaintiff's reliance upon *Ott v. St. Luke Hospital of Campbell County, Inc.,* 522 F.Supp. 706, 708–711 (E.D.Ky.1981) is misplaced. That case involved the question of a staff physician's due process rights under Kentucky statutes. There the plaintiff was alleging deprivation of his due process rights and wished to obtain from the hospital copies of the proceedings in which his denial of staff rights was discussed. District Judge Bertlesman correctly held that in that case to deny the plaintiff the right to obtain this material would be in effect to deny him a right to prove his case and therefore that the state confidentiality statute, K.R.S. 311.377 would have to give way to the plaintiff's legal due process rights.

■ In the case at bar, this is not true since plaintiff has had access to his medical records and the depositions of some fifteen witnesses have been taken. Therefore, there has been no denial of her due process rights and *Ott* is plainly not controlling in the case at bar.

■ Finally, we come to the motion to compel the United States to produce records in the possession of Verina Wheatley. Verina Wheatley is the Quality Assurance Coordinator for the Veterans Administration and the records which are sought are apparently records which pertain to quality assurance matters and to records which would show whether or not the Veterans Administration has complied with

JCAH standards and requirements. It is noted that JCAH has filed a brief stating that its only mission is to promote quality health control within the United States for the benefit of patients. It is also noted that the confidentiality of its communications with hospitals is vitally important to the effective conduct of its accreditation programs. JCAH also notes that its procedures include the reviewing and evaluation of professional activities by the peers of the profession. It reviews each hospital on the scene and its procedures call for frank and important communications between the hospital and the joint commission. In *Niven, supra,* the plaintiffs had filed a medical malpractice suit against Dr. Siqueira, Northwestern Memorial Hospital and several persons associated with Northwestern's administration. On plaintiff's application, the circuit court issued a subpoena asking for certain documents in the possession of JCAH relating to Northwestern's accreditation. The circuit court denied the motion to quash but the Illinois Supreme Court reversed.

The court noted that the plaintiffs had claimed that Northwestern was negligent in allowing Dr. Siqueira's clinical privilege to perform the surgery which resulted in plaintiff's injuries. They claimed that Northwestern failed to adequately review Dr. Siqueria's clinical privileges alleging as a standard of care JCAH's accreditation standards. The subpoena asked for all documents pertaining to reports of the JCAH with respect to Northwestern Hospital and "all self surveys and reports given by Northwestern Memorial" and all official records of JCAH regarding the hospital and all documents relating to the hospital and all reports of JCAH.

The court went on to describe in some detail the functions of JCAH and its procedure for accreditation. After doing so, it noted that a confidentiality purpose of the Illinois statute which referred to "allied Medical studies" was applicable to materials in the hands of JCAH which is described as being a legitimate medical society.

In light of the above authorities, we deny both motions of plaintiffs and of the University of Louisville to compel production of committee reports and documents in the possession of Verina Wheatley.

### ORDER

This matter having come before the Court on motions to compel and requests for protective order, and the Court having entered its memorandum opinion and being advised,

IT IS ORDERED that the motion to compel production of the document variously referred to as the "Hurt Report" or the "Incident Report" is overruled, and the motion for protective order regarding this document is sustained.

IT IS FURTHER ORDERED that the motion to compel production of documents in the possession of Verina Wheatley is overruled, and the motion for protective order regarding Ms. Wheatley is sustained.