Linda L. HICKMAN, et al., Plaintiffs,

v.

WHIRLPOOL CORP., Defendant.

No. 3:97CV7665.

United States District Court,
N.D. Ohio,
Eastern Division.

May 12, 1999.

W. Patrick Murray, Margaret M. Murray, Murray & Murray, Sandusky, OH, for Linda and Richard Hickman.

Stephen R. Serraino, Robert M. Anspach, Law Offices Of Robert M., Anspach & Associates, Toledo, OH, for Whirlpool Corporation, defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on a discovery dispute brought about by Defendant's objections to Plaintiff's requests. Pursuant

to this Court's Order issued April 22, 1999, Defendant submitted documents to the Court for an *in camera* review. Upon review of the said materials, this Court finds that Defendant shall not be required to produce the requested documents.

## BACKGROUND

For the purposes of this Memorandum Opinion, only a basic outline of the facts is necessary. Plaintiff Linda Hickman was employed as an operator of a drive tube welder machine at the Whirlpool plant in Clyde, Ohio. Plaintiff was a long term employee of at the plant but had only began operating the drive tube welder in April, 1997.

On August 14, 1997, Plaintiff was seriously injured while reaching into the machine in an attempt to free jammed tubes. Such jams occurred frequently. However, in this instance, when Plaintiff reached to free the jammed tubes, her shirt was caught by the conveyor belt. The conveyor belt continued to run after Plaintiff's shirt was caught and pulled first her brassiere and then her right breast into the machine. Her breast was pinched between the running belt and the wiper blade.

It took fifty minutes to free Plaintiff from the machine. She was transported to the hospital and given emergency care for the burns to her breast. Due to the severity of the burns, Plaintiff received grafting surgery, which created a ten-inch scar from the donor site on her right groin. Additionally, Plaintiff continues to bear a scar on her breast.

During the discovery process of the ensuing litigation, Plaintiff requested Defendant to produce the Proactive Safety Team Minutes for Component Manufacturing Center 145 and a compilation created by Mr. Thomas Ray involving plant safety. Defendant objected to the request, stating that the requests would not lead to the discovery of admissible evidence. Furthermore, with respect to the Safety Team Minutes, Defendant raised the privilege of "self critical analysis." The Court addresses the parties arguments below.

1. The *Dowling* opinion provided a history of the privilege within the text of FN1: "The privilege was first recognized in *Bredice v. Doctors Hosp.,*

## DISCUSSION

The Court reviewed the Proactive Safety Team Minutes for Component Manufacturing Center 145 and the compilation of Mr. Thomas Ray submitted for in camera review by Defendant. Upon reviewing the materials and relying on representations of counsel for Defendant that all materials relating to this matter have been supplied to the Plaintiff, the Court finds that the documents submitted are general in nature, and offer such a remote possibility of leading to discoverable, let alone admissible evidence, that the Court cannot direct Defendant to produce same. None of the "minutes" appeared related in any way to the machine involved in the accident in which Plaintiff was injured. Therefore, the Court will deny Plaintiff's motion to compel under Fed. R.Civ.P. 26(b)(1) for both the Safety Team Minutes and Mr. Ray's compilation.

Furthermore, with respect to the Proactive Safety Team Minutes, the Court believes that although the Sixth Circuit has not passed on the question, the Circuit would adopt the "self-critical analysis" privilege when faced squarely with the issue. The privilege encourages companies to continually monitor their safety measures and operations, with a view to correcting mistakes and improving safety. The Ninth Circuit has determined that in order to assert this privilege, the following test must be met: the information must result from self-critical analysis undertaken by the party seeking protection; the public must have a strong interest in preserving the free flow of the type of information sought; and the information must be of the type whose flow would be curtailed if discovery were allowed. In addition, no document should be accorded the privilege unless it was prepared with the expectation that it would be kept confidential. *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 426 (9th Cir.1992).[1] *See also* Note, *The Privilege of Self-Critical Analysis,* 96 Harv.L.Rev. 1083, 1086 (1983).

Both the Proactive Safety Team Minutes for Component Manufacturing Center 145

*Inc.,* 50 F.R.D. 249 (D.D.C.1970), aff'd, 479 F.2d 920 (D.C.Cir.1973) (minutes of hospital staff meetings regarding procedures to improve pa-

and the compilation of Mr. Thomas Ray meet the above test and should be accorded the privilege. The documents contain candid and open discussions concerning plant safety issues of Defendant, although the materials do not contain information specifically relevant to this action. The materials clearly contain self-critical analysis, and the public has a strong interest in preserving this type of data collection and dialog within industries. To require the production of this type of material would do great damage to this Defendant's efforts to improve safety and the efforts of business and industry in general. Allowing this type of information to be open to discovery would curtail and hinder this essential form of dialog. Finally, it is clear that these documents were prepared and collected with the expectation that they would be kept confidential.

Public policy certainly favors protection of such items because such candid dialog and collection of data functions to reduce injuries and improve productivity. Therefore, this Court believes that the Sixth Circuit would adopt the privilege of "self-critical analysis" when faced with the facts before this Court. Plaintiff's motion to compel discovery of the Proactive Safety Team Minutes for Component Manufacturing Center 145 and the compilation of Mr. Thomas Ray is denied.

## CONCLUSION

Plaintiff's motion to compel Whirlpool to produce discovery is denied. (Doc. No. 82).

IT IS SO ORDERED.

tient care could be protected from discovery in a malpractice suit because of the important public interest in having hospitals critically evaluate the quality of the care they provide). The Supreme Court and the circuit courts have neither definitively denied the existence of such a privilege, nor accepted it and defined its scope. Rather, when confronted with a claim of the privilege, they have refused on narrow grounds to apply it to the facts before them. *See University of Pa.*, 493 U.S. at 188–95, 110 S.Ct. at 581–85 (holding that Title VII does not support a privilege 'against disclosure of peer review materials that are relevant to charges of racial or sexual discrimination in tenure decisions'); *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1062–63 (7th Cir.1981) (refusing to apply privilege to peer review materials in doctor's antitrust action against hospital on grounds that the information was crucial to plaintiff's suit and that public interest in private antitrust enforcement was strong); *FTC v. TRW, Inc.*, 628 F.2d 207, 210–211 (D.C.Cir.1980) (holding that privilege does not apply where documents are sought by government agency, as opposed to private litigant); *United States v. Noall*, 587 F.2d 123, 125–26 (2d Cir.1978) (holding the privilege does not apply to documents sought by IRS where Congress has established policy requiring disclosure), cert. denied, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979)." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 n. 1 (9th Cir.1992).